IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JAMELL C. NEWBERN,**

**Petitioner,**

**v.**

**UNITED STATES OF AMERICA,**

**Respondent.**                                                          **No. 10-64-DRH**

<u>**ORDER**</u>

**HERNDON, Chief Judge:**

Before the Court is movant Jamell C. Newbern's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence (Doc. 1). Movant contends that pursuant to *Chambers v. United States*, 129 S. Ct. 687 (2009), and *Begay v. United States*, 553 U.S. 137 (2008), his prior state reckless discharge of a firearm conviction was erroneously classified as a crime of violence which resulted in him being classified as a career offender, and that therefore, he should be resentenced without the career offender enhancement. For the reasons that follow, the motion is dismissed as untimely.

**I. Background**

In April 2005, movant was charged by indictment with possession with intent to distribute a mixture or substance containing cocaine base, 21 U.S.C. § 841(a)(1). On August 3, 2005, movant plead guilty to that charge, and on December 7, 2005,

he was sentenced as a career offender to 300 months' imprisonment. At the time of sentencing, movant was classified as a career offender under U.S.S.G. § 4B1.1 , the offense guideline applicable to a defendant convicted of committing a crime of violence or a controlled-substance offense after incurring two prior convictions for crimes of violence or controlled-substance offenses. U.S.S.G. § 4B1.1(a), (b). The Court found that two of movant's convictions qualified as crimes of violence, i.e., reckless discharge of a firearm, 720 ILL. COMP. STAT. 5/24-1.5, which resulted in a man being shot in the leg, and aggravated battery ,720 ILL. COMP. STAT. 5/12-4(b)(6), after movant attempted to disarm a police officer. Accordingly, the Court found movant to be a career offender with a total offense level of 34 and a criminal history category VI, resulting in an imprisonment range of 262 to 327 months. Applying the guidelines as advisory and considering the factors in 18 U.S.C. § 3353(a), the court sentenced plaintiff to 300 months' imprisonment and a ten-year term of supervised release. Movant objected to his classification as a career offender on the basis that his conviction for reckless discharge of a firearm was considered a crime of violence. With regard to that objection, the Court stated:

> While the defendant is labeled a career criminal for one aspect of the Court's consideration, that being the advisory Sentencing Guidelines, even before considering his career criminal status, and again, that for purposes of the advisory Guidelines, this defendant's Criminal History Category was already a VI, the highest possible level.
>
> His criminal history is characterized with two weapons charges, another where he tried to take a police officer's weapon; and when that failed he struck the officer about the head with his fist. Defendant has another conviction for obstructing and resisting that involved physically pushing and striking a police officer. He has two other drug

convictions. He's 30 years old now, and all of this and more started at age 22. So, it seems to this Court that the label 'career criminal' is simply a description of what he does, not just a calculation under the Guidelines.

On December 21, 2005, movant filed a notice of appeal from that judgment, contending that reckless discharge of a firearm in violation of Illinois law was not a crime of violence. On March 13, 2007, the Seventh Circuit Court of Appeals entered an opinion upholding that judgment, finding that reckless discharge of a firearm in violation of Illinois was a crime of violence. See *United States v. Newbern*, 479 F.3d 506, 507 (7th Cir. 2007).

On January 27, 2010, movant filed his § 2255 motion, contending that pursuant to *Chambers* and *Begay* his prior reckless discharge of a firearm conviction was erroneously classified as a crime of violence which resulted in him being classified as a career offender. After examining the motion, the Court ordered the government to respond to movant's motion (Doc. 2). On August 20, 2010, the government filed its response to movant's motion (Doc. 5), whereby it alleged that movant's motion was untimely based upon the fact that it was *Begay* that initially recognized the right claimed by movant and that therefore his motion filed on January 12, 2010, was untimely as *Begay* was decided on April 16, 2008.

On November 29, 2010, movant filed a memorandum in support his § 2255 motion (Doc. 9). In that memorandum, movant asserts that while the government acknowledges that movant would be entitled to relief from his illegal sentence, the government would still have him serve an additional five years because movant failed

to recognize within one year that *Begay* changed the law in his favor. Movant contends that because he was never advised by his federal public defender, or anyone else for that matter, "equitable tolling" should apply to his case. Further, he argues that because there has been a substantial change in the law as to what circumstances qualify as "actual innocence" and/or a "miscarriage of justice," jurisdiction should be allowed under either 28 U.S.C. §§ 2241 or 2255 despite a late filed petition. Lastly, movant directed the Court to *Narvaez v. United States*, 674 F.3d 621 (7th Cir. 2011), a case which was pending before the Seventh Circuit at that time, and suggested that the Court defer any further action until that opinion was issued. That opinion was decided on June 3, 2011, but an amended opinion was issued on December 6, 2011.

On December 28, 2011, movant filed additional authority in support his motion and an additional request for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) (Doc. 10). Movant asserted that based upon *Narvaez*, he was clearly entitled to the relief he requested. Additionally, movant argued that he may also be entitled to an additional sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 750 to the Sentencing Guidelines. On January 23, 2012, the government filed its supplemental response to movant's motion (Doc. 14), contending that movant's original filed petition was untimely, that "actual innocence" did not provide an exception to the time limits proscribed by § 2255, that equitable tolling should not apply, that a "miscarriage or justice" or due process violation has not occurred, and that *Narvaez* was distinguishable. On September 25, 2012, movant

filed a motion for hearing (Doc. 15). For the reasons that follow, movant's motion is dismissed as being untimely. His motion for hearing (Doc. 15) is denied as moot.

## II. Analysis

A motion by a federal prisoner for postconviction relief under 28 U.S.C. § 2255 is subject to a one-year time limitation that runs from one of four specified dates, generally the date on which the conviction becomes final. *Clay v. United States*, 537 U.S. 522, 524-25 (2003); see 28 U.S.C. § 2255. More specifically, the one year limitation period runs from the latest of the following dates:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by the governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through exercise of due diligence.

28 U.S.C. § 2255(f).

Section 2255's period of limitation is not jurisdictional but is instead a procedural statute of limitations subject to equitable tolling. *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000) (citing *Taliani v. Chrans*, 189 F.3d 597 (7th Cir. 1999)). "Even so, equitable tolling is granted sparingly." *Marcello*, 212 F.3d at 1010 (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). "Extraordinary circumstances far beyond the litigant's control must have prevented timely filing." *Marello*, 212 F.3d at 1010 (citing *Hoosier Bancorp of Ind., Inc. v.*

*Rasmussen*, 90 F.3d 180, 183 (7th Cir. 1996)); see also *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008) (finding that equitable tolling may apply to cases on collateral review but only when it does not conflict with the strictures of 28 U.S.C. § 2244(d) and noting that the Seventh Circuit has yet to identify a petitioner whose circumstances warrant it). Indeed, besides showing extraordinary circumstances outside the movant's control through no fault of movant's own, the movant must also show that he has diligently pursued his claim, despite the obstacle. *Tucker*, 538 F.3d at 734 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

The one year limitation period relevant here refers to "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). In this case, movant argues that his claim filed on January 12, 2010, was filed within one year of the date on which the right asserted was initially recognized by the Supreme Court, relying on *Chambers* which was decided on January 13, 2009, and not *Begay* which was decided on April 16, 2008. Nevertheless, even if movant's petition was untimely, he contends that the Court should exercise its jurisdiction and reduce his sentence based on a number of theories.

On April 16, 2008, the Supreme Court held in *Begay* that New Mexico's felony offense of driving under the influence of alcohol under New Mexico law was not a "violent felony" under the Armed Career Criminal Act. 553 U.S. at 139. On January 13, 2009, the Supreme Court held in *Chambers* that a "failure to report" for penal

confinement was not a "violent felony" within the terms of the Armed Career Criminal Act. 555 U.S. at 123. On August 17, 2009, the Seventh Circuit specifically considered in *United States v. Gear*, 577 F.3d 810 (7th Cir. 2009), whether the offense of reckless discharge of a firearm in violation of 720 ILCS 5/24-1.5(a), the offense that the Court used to classify movant as a career offender, was a "violent felony" for purposes of finding career offender status under § 4B1.1. Ultimately, the court concluded "that conviction under 720 ILCS 5/24-1.5(a) need not denote the sort of purposeful, aggressive, and violent conduct that *Begay* requires for classification as a violent felony under the residual category." *Gear*, 577 F.3d at 813.

On June 3, 2011, the Seventh Circuit decided *Narvaez*, and on December 6, 2011, an amended opinion was issued. In *Narvaez*, the defendant plead guilty to bank robbery in 2003 and was sentenced as a career offender pursuant to § 4B1.1 of the Sentencing Guidelines based on prior escape convictions involving failure to return to confinement, violations of Wisconsin Statute section 946.42(3)(a). At the time of sentencing, the defendant's felony escape convictions constituted "crimes of violence" within the meaning of the career offender guideline. On April 15, 2009, the defendant filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255(a) on the basis that imposition of the career offender status was illegal in light of the Supreme Court's decision in *Begay* and *Chambers*. The district court denied the defendant's motion on the basis that *Begay* and *Chambers* did not apply retroactively to cases on collateral review. Nevertheless, it granted the defendant a certificate of appealability.

On appeal, the government conceded that *Begay* and *Chambers* decided questions of substantive statutory construction and that they applied retroactively on collateral review. *Id.* at 625. The government further conceded that the defendant's prior escape convictions for failure to return to confinement did not constitute crimes of violence under the career offender guideline. *Id.* Despite this, the government argued that no certificate of appealability should have been issued because the certificate did not identify a substantial constitutional question as required by 28 U.S.C. § 2253(c)(2), and that the defendant was not entitled to relief because no miscarriage of justice occurred. *Id.*

Initially, the Seventh Circuit recognized that both parties and it agreed that the defendant's motion under § 2255 was timely. The Seventh Circuit stated:

> Section 2255(f)(3) of Title 28 provides that a motion is timely if it is filed within one year of 'the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.' There is no dispute that the right asserted by [the defendant]–the right not to receive an enhanced sentenced based on an incorrect understanding of the term 'crime of violence'– was recognized by the Supreme Court in *Begay* and *Chambers*. [Defendant] filed his motion within one year of both the *Begay* and *Chambers* decisions.

*Id.* at 625. The Seventh Circuit then found that *Begay* and *Chambers* applied retroactively on collateral review because "*Chambers*, like *Begay*, falls within the class of substantive decisions that 'prohibit[ ] a certain category of punishment for a class of defendants because of their status or offense[.]'" *Id.* at 625-26 (quoting *O'Dell v. Neverland*, 521 U.S. 151, 157 (1997) (internal quotation marks omitted)).

Next, the Seventh Circuit addressed the government's argument regarding the certificate of appealability. *Narvaez*, 674 F.3d at 626. The certificate in that case raised a claim that the defendant's illegal designation as a career offender resulted in an increase in his term of imprisonment that deprived him of liberty without due process of law. *Id.* The Seventh Circuit found that the defendant had a "'constitutional right to be deprived of liberty as punishment for criminal conduct only to the extent authorized by Congress.'" *Id.* at 627.

The Seventh Circuit then acknowledged that while sentencing errors are generally not cognizable on collateral review, the defendant's case presented "a special and very narrow exception: A postconviction clarification in the law has rendered the sentencing court's decision unlawful." *Id.* "More precisely, it is now clear that [the defendant] never should have been classified as a career offender and never should have been subjected to the enhanced punishment reserved for such repetitive *and* violent offenders." *Id.* The court then found that although the defendant claimed he was entitled to § 2255 relief on the basis that his career offenders status resulted in a complete miscarriage of justice and because the error resulted in a violation of his due process rights, the Court need not reach the defendant's due process claim because a miscarriage of justice entitled the defendant to relief. *Id.*

The Court then looked to *Davis v. United States*, 417 U.S. 333 (1974), and *In re Davenport*, 147 F.3d 605 (7th Cir. 1998). *Narvaez*, 674 F.3d at 627-28. In *Davis*, the Supreme Court found that the petitioner was entitled to "§ 2255 relief after

a subsequent interpretation of the statute, under which he was convicted, established that the his conviction and punishment were 'for an act that the law does not make criminal.'" *Narvaez*, 674 F.3d at 628 (quoting *Davis*, 417 U.S. at 346). "The Supreme Court concluded that '[t]here can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice.'" *Narvaez*, 674 F.3d at 628 (quoting *Davis*, 417 U.S. at 346) (internal quotation marks omitted). The Court also acknowledged that in *In re Davenport*, it "found that the defendant was 'indeed being held in prison for a nonexistent crime,' and, accordingly, he may be entitled to collateral relief." *Narvaez*, 674 F.3d at 628 (citing *In re Davenport*, 147 F.3d at 610).

The court then found that "[a]lthough these cases provide collateral relief when a defendant is innocent of the underlying crime, we believe that the reasoning extends to this case, where a postconviction Supreme Court ruling made clear that [the defendant] was not eligible for the categorization of a violent offender wrongfully imposed upon him." *Narvaez*, 674 F.3d at 628. The court then looked to its decision in *Welch v. United States*, 604 F.3d 408 (7th Cir. 2010), where it "found the defendant's challenge to his sentence under the ACCA 'analogous' to the situation in *Davis* where the defendant's punishment 'for an act that the law does not make criminal' resulted in 'a complete miscarriage of justice.'" *Narvaez*, 674 F.3d at 628 (quoting *Welch*, 604 F.3d at 413 n. 6). Finding the definition of "violent felony" under the ACCA the same as the definition of "crime of violence" under the Sentencing Guidelines, the court found it would be inappropriate to treat the texts differently.

*Narvaez*, 674 F.3d at 628 (citing *United States v. Templeton*, 543 F.3d 378, 380 (7th Cir. 2008)). Further, the court noted that "at the time of [defendant's] sentencing, the Guidelines were *mandatory*." *Narvaez*, 674 F.3d at 628 (emphasis in original). The court found that the "case therefore involves the classifying of an individual as belonging to a subgroup of defendants, repeat violent offenders, that traditionally has been treated very differently from other offenders." *Id.* at 629. The court concluded that "[t]o classify [the defendant] as belonging to this group and therefore to increase, dramatically, the point of departure for his sentence is certainly as serious as the most grievous misinformation that has been the basis for granting habeas relief." *Id.* Therefore, the court found a miscarriage of justice occurred. *Id.*

In response to the government's argument that § 2255 was unwarranted because the defendant's sentence was within the authorized statutory maximum for his crime, the court stated the following:

> We cannot accept this argument. The fact that [the defendant's] sentence falls below the applicable statutory-maximum sentence is not alone determinative of whether a miscarriage of justice has occurred. The imposition of the career offender status branded [the defendant] as a malefactor deserving of far greater punishment than that usually meted out for an otherwise similarly situated individual who had committed the same offense. It created a legal presumption that he was to be treated differently from other offenders because he belonged in special category reserved for the violent and incorrigible. No amount of evidence in mitigation or extenuation could erase that branding or its effect on his sentence. His designation as a career offender simply took as unchallenged a premise that was not true and gave him no way of avoiding the consequences of that designation. The sentencing court's misapplication of the *then-mandatory* § 4B1.1 career offender categorization in [the defendant's] case was the lodestar to its guidelines calculation. It placed him in a very special status for the calculation of his final sentence solely because the court ruled that he was a career

> offender and that the corresponding guidelines required such a status. Speculation that the district court today might impose the same sentence is not enough to overcome the fact that, at the time of the initial sentencing, [the defendant] was sentenced based upon the equivalent of a nonexistent offense. As the Supreme Court put it *Hicks v. Oklahoma*, 447 U.S. 343, 346, 100 S. Ct. 2227, 65 L. Ed. 2d 175 (1980), to assume that the same sentence would have been imposed in the absence of the career offender provision is "full conjecture" that evinces in itself "an arbitrary disregard of the petitioner's right to liberty." This error clearly constitutes a miscarriage of justice. The Government is correct that [the defendant] does not have an absolute right to a lower sentence. Nevertheless, he does have an absolute right not to stand before the court as a career offender when the law does not impose that label on him.

*Id.* at 629. Therefore, the court found that the career offender status illegally increased the defendant's sentence approximately five years beyond that authorized by the statutory scheme, resulting in a miscarriage of justice. *Id.* at 630. Accordingly, the court reversed the judgment of the district court and remanded for sentencing without the imposition of a career offender status. *Id.*

Here, movant's motion was filed January 12, 2010. Thus, it was filed within one year of *Chambers*, which was decided on January 13, 2009, but not timely filed within one year of *Begay*, which was issued on April 16, 2008. As a result, the government contends that movant's § 2255 motion was untimely because it was not filed within one year of the date on which the right asserted was "initially" recognized by the Supreme Court in *Begay*. The Court agrees.

In *Narvaez*, the Court found that the defendant's § 2255 motion was timely filed because it was filed within one year of *both* the *Begay* and *Chambers* decisions. Here, movant's motion is only filed within one year of *Chambers*, but not *Begay*.

The right movant asserts here – the right not to receive an enhanced sentence based an incorrect understanding that reckless discharge of a firearm in violation of 720 ILCS 5/24-1.5(a) qualified as a crime of violence for purposes of career offender status – was "initially recognized" in *Begay*, not *Chambers*. See 28 U.S.C. § 2255(f)(3). Indeed, the Seventh Circuit in *Gear*, the case finding that reckless discharge of a firearm was not a violent crime for purposes of career offender status, relied exclusively on *Begay* and did not cite to *Chambers* in reaching its determination. The Supreme Court in *Dodd v. United States*, 545 U.S. 353 (2005), stated that the text of paragraph § 2255(f)(3) "unequivocally identifies one, and only one, date from which the 1-year limitation period is measured: 'the date on which the right asserted was initially recognized by the Supreme Court.'" *Id.* at 357. The right movant relies on here was initially recognized in *Begay* and he had one year from the date of the decision to file his motion. Accordingly, his motion is untimely.

Nevertheless, movant contends that even if the motion is untimely, "equitable tolling" should apply because no one advised movant "that *Begay* may have changed the law retroactively on this very important issue." Clearly these are not "[e]xtraordinary circumstances far beyond the litigant's control [that] have prevent timely filing." *Marello*, 212 F.3d at 1010 (citing *Rasmussen*, 90 F.3d at 183)). Movant does not have a right to be informed by someone else when the law may or may not have changed in movant's favor, and movant does not even attempt to argue that there were extraordinary circumstances outside of his control through no fault of his own for why he did not timely file his claim. Thus, equitable tolling does not

apply.

Movant also argues that the district court should exercise its jurisdiction because movant is actually innocent of being a career offender, that the district court's determination constitutes a fundamental defect that results in a complete miscarraige of justice, and that his due process rights were violated because the sentence was imposed on the basis of inaccurate information. The Court disagrees.

First, this Court is not aware of any cases where either the Supreme Court or the Seventh Circuit has ever applied the actual innocence exception to overcome the failure to timely file a § 2255 motion. See *Gildon v. Brown*, 384 F.3d 883, 887 (7th Cir. 2004) ("However, neither the Supreme Court nor this court has ever applied the actual innocence exception to overcome the failure to timely file under § 2244."); *Escamilla v. Jungwrith*, 426 F.3d 868, 871 (7th Cir. 2005) ("The legal shortcoming is that 'actual innocence' is unrelated to the statutory timeliness rules."). Further, after *United States v. Booker*, 543 U.S. 220 (2005), the Guidelines are advisory, and there was no miscarriage of justice or due process violation in this case. See *Smith*, 544 F.3d at 813.

Here, the statutory term of imprisonment for movant was twenty years to life. See 21 U.S.C. §§ 841(b)(1)(A), 851. At the time of sentencing, movant's base offense level was calculated to be 34 because of his status as a career offender with a criminal history category of VI resulting in a guideline range from 262 to 327 months' imprisonment. Without career offender status, movant's base offense level would have been 29 with a criminal history category VI and a guideline range from 151 to

188 months' imprisonment. While the guideline range would have been different, movant's sentence was within the limits set forth by statute and this Court believes it was within its discretion in sentencing movant to a term of 300 months' imprisonment. Indeed, this Court noted at movant's sentencing that being labeled as "'career criminal' is simply a description of what he does, not just a calculation under the Guidelines."

Thus, unlike in *Narvaez* where "[t]he sentencing court's misapplication of the *then-mandatory* § 4B.1 career offender categorization in [that defendant's] was the lodestar to its guideline calculation," 674 F.3d at 629, the career offender categorization in this was not mandatory but rather was merely advisory. Further, unlike in *Narvaez*, there is no speculation here that the district court might impose the same sentence in the absence of the career offender provision because this Court affirmatively states that it would impose the same sentence. Thus, even if movant's § 2255 was timely filed and his argument had merit, any remand would be futile because the same sentence would be imposed.

As to movant's request that this matter be referred to the United States Probation Office for an assessment as to whether, and to what extent, his base offense level should be reduced pursuant to 18 U.S.C. § 3582(C)(2), the Court finds in light of the fact that Newburn will not be resentenced the Fair Sentencing Act does not require that his sentence be retroactively reduced. As for the Court exercising its discretion to reduce its sentence, as aforementioned there is no question that this Court imposed the sentence it believed was just and reasonable under the

circumstances, particularly in light of the Newburn's criminal history, and the Court will not reduce his sentence now pursuant to 18 U.S.C. § 3582(C)(2).

Where a district denies a habeas petition on procedural grounds, the court should issue a certificate of appealability only if (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. See *Slack v. McDaniel,* 529 U.S. 473, 485 (7th Cir. 2000). Here, the Court finds that reasonable jurists could not debate that the petition was untimely. Therefore, the Court declines to certify any issues for review pursuant to 28 U.S.C. § 2253(c).

### III. Conclusion

For the reasons stated above, movant's § 2255 motion (Doc. 1) is dismissed with prejudice for being untimely. The motion for hearing is denied as moot. No certificate of appealability shall be issued in this case. The Clerk is directed to enter judgment in this case.

**IT IS SO ORDERED.**

Signed this 26th day of December, 2012.

Digitally signed by David R. Herndon
Date: 2012.12.26 11:11:25 -06'00'

**Chief Judge**
**United States District Court**